**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

IN RE:                                                  Case No.19-30218-KKS

GRACE P. COMPTON,                          Chapter 7

            Debtor.

_____/

**BRANCH BANKING AND TRUST COMPANY'S**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**
**(Re: 7898 Stonebrook Dr, Pensacola, Florida 32514)**

---

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

**Pursuant to Local Rule 2002-2, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the proof of service plus an additional three days for service if any party was served by U.S. Mail, or such other period as may be specified in Fed. R. Bankr. P. 9006(f).**

**If you object to the relief requested in this paper, you must file an objection or response electronically with the Clerk of the Court or by mail at 110 E. Park Avenue, Suite 100, Tallahassee, FL, 32301 and serve a copy on the movant's attorney, Wanda D. Murray, at Aldridge | Pite LLP, Fifteen Piedmont Center, 3575 Piedmont Road, N.E., Suite 500, Atlanta, GA 30305, and any other appropriate person within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

     Branch Banking and Trust Company ("Movant"), by and through undersigned counsel, files this *Motion for Relief from the Automatic Stay*, and in support states as follows:

     1.     The Court has jurisdiction over this matter pursuant to 11 U.S.C. §362, Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.       On March 4, 2019, Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code.

3.       Movant holds a security interest in Debtor's real property located at 7898 Stonebrook Dr, Pensacola, Florida 32514 the ("Property"), by virtue of a Mortgage which is recorded in the Public Records of Escambia County, Florida in Book 5738 at Page 4117. Said Mortgage secures a Note in the original amount of $93,520.00. True and correct copies of the relevant loan documents are attached as **Composite Exhibit A.**

4.       The aforementioned mortgage gives Movant a First Mortgage position on the property legally described as:

> **LOT 10-E, BLOCK A, VILLAS AT SILVERTON, PHASE 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 17, PAGE 94, OF THE PUBLIC RECORDS OF ESCAMBIA COUNTY, FLORIDA.**

5.       The Property has not been claimed exempt by Debtor. Additionally, according to the *Statement of Intentions*, the Property is being surrendered. The Property has not been abandoned by the Trustee.

6.       Debtor is indebted to Movant in the amount of $71,677.78 principal balance, plus other fees and costs advanced by the mortgagee pursuant to the loan documents. See *Affidavit in Support of Motion for Relief from Automatic Stay* as **Exhibit B.**

7.       Payments pursuant to the Mortgage have been in default and remain in default since August 1, 2018. See Payment History attached as **Exhibit C.**

8.       Furthermore, according to the Escambia County Property Appraiser, the estimated value of the Property is $83,520.00. See Escambia County Property Appraisal attached as **Exhibit D.**

9.       Movant's security interest in the Property is being significantly jeopardized by Debtor's failure to make regular payments under the subject loan documents while Movant is prohibited from pursuing lawful remedies to protect such security interest.

10.      Movant respectfully requests that the Court grant it relief from the automatic stay in this case pursuant to 11 U.S.C. §362(d)(1), for cause, namely the lack of adequate protection to Movant for its security interest in the Property. The value of the Property is insufficient in and of itself to provide adequate protection to Movant, which the Bankruptcy Code requires to be provided.

11.     Movant further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by Movant in connection with proceeding against the Property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtor.

12.     Pursuant to 11 U.S.C. §362(e), Movant hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

13.     Movant hereby seeks its attorneys' fees and costs incurred in filing this *Motion for Relief from the Automatic Stay*. Movant's attorneys' fees and costs are recoverable as part of the debt pursuant to the loan documents but shall not be a personal liability of Debtor.

14.     Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in the Property outside of the bankruptcy forum, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, that Debtor be required to pay Movant's attorneys' fees and costs incurred in filing this Motion for Relief from the Automatic Stay, that the Court waive the fourteen (14) day stay, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:

Wanda D. Murray, Bar No.: 566381
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: WMurray@aldridgepite.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Motion for Relief from the Automatic Stay* was served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTOR ATTORNEY**
**(via electronic notice)**

Amy Logan Sliva
Law Office of Amy Logan Sliva
313 W. Gregory St.
Pensacola, FL 32502
amysliva@cox.net

**DEBTOR**

Grace P. Compton
5626 Northrop Rd.
Milton, FL 32570

**TRUSTEE**
**(via electronic notice)**

Sherry Chancellor
Law Office of Sherry F. Chancellor
619 West Chase St.
Pensacola, FL 32502
sherry.chancellor@yahoo.com

**UNITED STATES TRUSTEE**
**(via electronic notice)**

Department of Justice
Northern District of Florida at Pensacola
U.S. Trustee
110 E. Park Avenue
Suite 128
Tallahassee, FL 32301
USTPRegion21.TL.ECF@usdoj.gov

Dated: March 15, 2019

/s/ *Wanda D. Murray*
Wanda D. Murray, Bar No.: 566381
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: WMurray@aldridgepite.com

## NOTE

MIN #:

AUG 0 4 2005

[Date]                    Pensacola                    Florida
                          [City]                       [State]

7898 Stonebrook Dr, Pensacola, FL 32514
                                    [Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 93,520 00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Branch Banking and Trust Company

I will make all payments under this Note in the form of cash, check or money order

I understand that the Lender may transfer this Note The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder"

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid I will pay interest at a yearly rate of 5.875 %

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month

I will make my monthly payment on the 1st day of each month beginning on October 1, 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal If, on September 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date"

I will make my monthly payments at 223 West Nash Street, Wilson, NC 27893 or at a different place if required by the Note Holder

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U S. $ 553 21

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due A payment of Principal only is known as a "Prepayment" When I make a Prepayment, I will tell the Note Holder in writing that I am doing so I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

DOC
FLORIDA FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT



-SN(FL) (0005) 02
Form 3210 1/01
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3          Initials

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be            5 000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note The Note Holder may enforce its rights under this Note against each person individually or against all of us together This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

DOC

·5N(FL) (0005)                                      Page 2 of 3                                      Form 3210 1/01

Initials _____

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Grace M Compton_ _____ (Seal)
Grace M Compton                -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

_____ (Seal)
                           -Borrower

BRANCH BANKING AND TRUST COMPANY

BY _Julie M Palmer_____
       JULIE M. PALMER, VP

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

[Sign Original Only]

DOC:

-SN(FL) (0005)                Page 3 of 3                Form 3210 1/01

Composite Exhibit A



Ernie Lee Magaha
CLERK OF THE CIRCUIT COURT
ESCAMBIA COUNTY FLORIDA
INST# 2005434782 09/28/2005 at 12 43 PM
OFF REC BK  5738  PG  417  438 Doc Type  MTG
RECORDING  $171 50

MTG Stamps $327 60 Int  Tax $187 04


Return To

EDSEL F MATTHEWS JR PA
308 S Jefferson St
Pensacola FL
05-176


This document was prepared by
Prepared by
And Return to
EDSEL F MATTHEWS JR  PA
308 S Jefferson St
Pensacola FL 32502

——————————————[Space Above This Line For Recording Data]——————————————

# MORTGAGE

MIN ███████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3 11 13 18 20 and 21  Certain rules regarding the usage of words used in this document are also provided
in Section 16

(A) "Security Instrument" means this document, which is dated  August  4, 2005
together with all Riders to this document.
(B) "Borrower" is  Grace M Compton  a single woman

Borrower is the mortgagor under this Security Instrument.
(C)  MERS  is Mortgage Electronic Registration Systems Inc  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender s successors and assigns  MERS is the mortgagee under
this Security Instrument  MERS is organized and existing under the laws of Delaware  and has an address
and telephone number of P O  Box 2026 Flint  MI 48501 2026 tel  (888) 679 MERS
(D) "Lender  is Branch Banking and Trust Company

FDC
FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3010 1/01

6A(FL) (0005) 01
Page 1 of 16    U631  0005 10        Initials
    VMP MORTGAGE FORMS  (800)521 7291

Lender is a  Corporation
organized and existing under the laws of  North Carolina
Lender's address is  223 West Nash Street  Wilson  NC  27893

(E) "Note" means the promissory note signed by Borrower and dated    as of  the  date  hereof
The Note states that Borrower owes Lender   Ninety Three Thousand Five Hundred
Twenty and No/100                                                                   Dollars
(U S $  93 520 00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   September 1  2035
(F)  Property   means the property that is described below under the heading  Transfer of Rights in the
Property
(G) ' Loan"  means the debt evidenced by the Note plus interest, any prepayment charges and late charges
due under the Note and all sums due under this Security Instrument, plus interest.
(H)  Riders"  means all Riders to this Security Instrument that are executed by Borrower  The following
Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal state and local statutes regulations
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final
non appealable judicial opinions"
(J)  Community Association Dues, Fees, and Assessments' means all dues fees assessments and other
charges that are imposed on Borrower or the Property by a condominium association homeowners
association or similar organization
(K) "Electronic Funds Transfer  means any transfer of funds other than a transaction originated by check
draft, or similar paper instrument, which is initiated through an electronic terminal telephonic instrument
computer or magnetic tape so as to order instruct or authorize a financial institution to debit or credit an
account Such term includes  but is not limited to point of sale transfers automated teller machine
transactions transfers initiated by telephone wire transfers and automated clearinghouse transfers
(L) "Escrow Items" means those items that are described in Section 3
(M) "Miscellaneous Proceeds" means any compensation settlement, award of damages or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i)
damage to or destruction of the Property (ii) condemnation or other taking of all or any part of the Property
(iii) conveyance in lieu of condemnation or (iv) misrepresentations of or omissions as to the value and/or
condition of the Property
(N) "Mortgage Insurance' means insurance protecting Lender against the nonpayment of or default on the
Loan
(O) "Periodic Payment' means the regularly scheduled amount due for (i) principal and interest under the
Note plus (ii) any amounts under Section 3 of this Security Instrument.

DCD

6A(FL) (0005) 01                          Page 2 of 16                    Initials          Form 3010  1/01

(P) "RESPA' means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation Regulation X (24 C F R Part 3500) as they might be amended from time to time or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a federally related mortgage loan even if the Loan does not qualify as a federally related mortgage loan under RESPA

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property whether or not that party has assumed Borrower s obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan and all renewals extensions and modifications of the Note and (ii) the performance of Borrower s covenants and agreements under this Security Instrument and the Note For this purpose Borrower does hereby mortgage grant and convey to MERS (solely as nominee for Lender and Lender s successors and assigns) and to the successors and assigns of MERS the following described property located in the County [Type of Recording Jurisdiction] of Escambia [Name of Recording Jurisdiction]

*See Exhibit A' which is attached hereto*

Parcel ID Number 20 / 5 30 2101005004                    which currently has the address of
7898 Stonebrook Dr                                                                        [Street]
Pensacola                                                    [City] Florida    32514          [Zip Code]
( Property Address )

TOGETHER WITH all the improvements now or hereafter erected on the property and all easements appurtenances and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the Property Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom MERS (as nominee for Lender and Lender s successors and assigns) has the right to exercise any or all of those interests including but not limited to the right to foreclose and sell the Property and to take any action required of Lender including but not limited to releasing and canceling this Security Instrument.

DOC

-6A(FL) (0005) 01                    Page 3 of 16          Initials                    Form 3010 1/01

EXHIBIT "A"

Lot 10-E, Block A, Villas at Silverton, Phase 2, according to the plat thereof, recorded in Plat Book 17, Page 94, of the Public Records of Escambia County, Florida

Composite Exhibit A

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage grant and convey the Property and that the Property is unencumbered except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

1 Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges Borrower shall pay when due the principal of and interest on the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3 Payments due under the Note and this Security Instrument shall be made in U S currency However if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms as selected by Lender (a) cash (b) money order (c) certified check bank check treasurer s check or cashier s check provided any such check is drawn upon an institution whose deposits are insured by a federal agency instrumentality or entity or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current, If Borrower does not do so within a reasonable period of time Lender shall either apply such funds or return them to Borrower If not applied earlier such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument,

2 Application of Payments or Proceeds Except as otherwise described in this Section 2 all payments accepted and applied by Lender shall be applied in the following order of priority (a) interest due under the Note (b) principal due under the Note (c) amounts due under Section 3 Such payments shall be applied to each Periodic Payment in the order in which it became due Any remaining amounts shall be applied first to late charges second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if and to the extent that, each payment can be paid in



LOAN                                          Initials        LOAN

Composite Exhibit A

full To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments such excess may be applied to any late charges due Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments insurance proceeds or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date or change the amount, of the Periodic Payments

3 Funds for Escrow Items Borrower shall pay to Lender on the day Periodic Payments are due under the Note until the Note is paid in full a sum (the Funds ) to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property (b) leasehold payments or ground rents on the Property if any (c) premiums for any and all insurance required by Lender under Section 5 and (d) Mortgage Insurance premiums if any or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10 These items are called Escrow Items At origination or at any time during the term of the Loan Lender may require that Community Association Dues Fees and Assessments if any be escrowed by Borrower and such dues fees and assessments shall be an Escrow Item Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower s obligation to pay the Funds for any or all Escrow Items Lender may waive Borrower s obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be in writing In the event of such waiver Borrower shall pay directly when and where payable the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and if Lender requires shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower s obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase covenant and agreement is used in Section 9 If Borrower is obligated to pay Escrow Items directly pursuant to a waiver and Borrower fails to pay the amount due for an Escrow Item Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and upon such revocation Borrower shall pay to Lender all Funds and in such amounts that are then required under this Section 3

Lender may at any time collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency instrumentality or entity (including Lender if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds annually analyzing the escrow account or verifying the Escrow Items unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds Lender shall not be required to pay Borrower any interest or earnings on the Funds Borrower and Lender can agree in writing however that interest shall be paid on the Funds Lender shall give to Borrower without charge an annual accounting of the Funds as required by RESPA



DCC          Initials    LOAN

6A(FL) (0005) 01        Page 5 of 16        Form 3010 1/01

Composite Exhibit A

If there is a surplus of Funds held in escrow as defined under RESPA Lender shall account to Borrower for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow as defined under RESPA Lender shall notify Borrower as required by RESPA and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA but in no more than 12 monthly payments If there is a deficiency of Funds held in escrow as defined under RESPA Lender shall notify Borrower as required by RESPA and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4  Charges, Liens  Borrower shall pay all taxes assessments charges fines and impositions attributable to the Property which can attain priority over this Security Instrument leasehold payments or ground rents on the Property if any and Community Association Dues Fees and Assessments if any To the extent that these items are Escrow Items  Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by or defends against enforcement of the lien in legal proceedings which in Lender s opinion operate to prevent the enforcement of the lien while those proceedings are pending but only until such proceedings are concluded or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien Within 10 days of the date on which that notice is given Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5  Property Insurance  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire hazards included within the term extended coverage  and any other hazards including but not limited to earthquakes and floods for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the Loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender s right to disapprove Borrower s choice which right shall not be exercised unreasonably Lender may require Borrower to pay in connection with this Loan either (a) a one time charge for flood zone determination certification and tracking services or (b) a one time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above Lender may obtain insurance coverage at Lender s option and Borrower s expense Lender is under no obligation to purchase any particular type or amount of coverage Therefore such coverage shall cover Lender but might or might not protect Borrower Borrower s equity in the Property or the contents of the Property against any risk hazard



DOC                                                                              LOAN #

SA(FL) (0005) 01          Page 6 of 18       Initials       Form 3010  1/01

Composite Exhibit A

or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee Lender shall have the right to hold the policies and renewal certificates If Lender requires Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices If Borrower obtains any form of insurance coverage not otherwise required by Lender for damage to or destruction of the Property such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing any insurance proceeds whether or not the underlying insurance was required by Lender shall be applied to restoration or repair of the Property if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction provided that such inspection shall be undertaken promptly Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds Lender shall not be required to pay Borrower any interest or earnings on such proceeds Fees for public adjusters or other third parties retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower If the restoration or repair is not economically feasible or Lender's security would be lessened the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due with the excess if any paid to Borrower Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property Lender may file negotiate and settle any available insurance claim and related matters If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim then Lender may negotiate and settle the claim The 30 day period will begin when the notice is given In either event, or if Lender acquires the Property under Section 22 or otherwise Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property insofar as such rights are applicable to the coverage of the Property Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6 Occupancy Borrower shall occupy establish and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy unless Lender otherwise



DOC

6A(FL) (0005) 01                    Page 7 of 16



Initials

LOAN

Form 3010   1/01

Composite Exhibit A

agrees in writing which consent shall not be unreasonably withheld or unless extenuating circumstances exist which are beyond Borrower's control

7 **Preservation, Maintenance and Protection of the Property, Inspections** Borrower shall not destroy damage or impair the Property allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage If insurance or condemnation proceeds are paid in connection with damage to or the taking of the Property Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed If the insurance or condemnation proceeds are not sufficient to repair or restore the Property Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8 **Borrower's Loan Application** Borrower shall be in default if during the Loan application process Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false misleading or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include but are not limited to representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9 **Protection of Lender's Interest in the Property and Rights Under this Security Instrument** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy probate for condemnation or forfeiture for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations) or (c) Borrower has abandoned the Property then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument including protecting and/or assessing the value of the Property and securing and/or repairing the Property Lender's actions can include but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding Securing the Property includes but is not limited to entering the Property to make repairs change locks replace or board up doors and windows drain water from pipes eliminate building or other code violations or dangerous conditions and have utilities turned on or off Although Lender may take action under this Section 9 Lender does not have to do so and is not under any duty or obligation to do so It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of

DCC     

Initials ___ LOAN ___

6A(FL) (0005) 01                Page 8 of 18                    Form 3010  1/01

Composite Exhibit A

Case 19-30218-KKS    Doc 18    Filed 03/15/19    Page 17 of 31

disbursement and shall be payable with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

10 Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If for any reason the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non refundable notwithstanding the fact that the Loan is ultimately paid in full and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available is obtained and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance Borrower shall pay the premiums required to maintain Mortgage Insurance in effect or to provide a non refundable loss reserve until Lender s requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law Nothing in this Section 10 affects Borrower s obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time and may enter into agreements with other parties that share or modify their risk or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements Lender any purchaser of the Note another insurer any reinsurer any other entity or any affiliate of any of the foregoing may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower s payments for Mortgage Insurance in exchange for sharing or modifying the mortgage insurer s risk or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer s risk in exchange for a share of the premiums paid to the insurer the arrangement is often termed captive reinsurance Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund

(b) Any such agreements will not affect the rights Borrower has if any with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination



DOC

6A(FL) (0005) 01                Page 9 of 16        Initials _____  LOA_____        Form 3010  1/01

Composite Exhibit A

11 Assignment of Miscellaneous Proceeds, Forfeiture All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged such Miscellaneous Proceeds shall be applied to restoration or repair of the Property if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due with the excess if any paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking destruction or loss in value of the Property the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due with the excess if any paid to Borrower

In the event of a partial taking destruction or loss in value of the Property in which the fair market value of the Property immediately before the partial taking destruction or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking destruction or loss in value unless Borrower and Lender otherwise agree in writing the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking destruction or loss in value divided by (b) the fair market value of the Property immediately before the partial taking destruction or loss in value Any balance shall be paid to Borrower

In the event of a partial taking destruction or loss in value of the Property in which the fair market value of the Property immediately before the partial taking destruction or loss in value is less than the amount of the sums secured immediately before the partial taking destruction or loss in value unless Borrower and Lender otherwise agree in writing the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower or if after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages Borrower fails to respond to Lender within 30 days after the date the notice is given Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument whether or not then due Opposing Party means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding whether civil or criminal is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and if acceleration has occurred reinstate as provided in Section 19 by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12 Borrower Not Released, Forbearance By Lender Not a Waiver Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

DOC ▉▉▉▉▉▉▉▉▉  Initials ▉▉▉  LOAN ▉▉▉▉▉▉▉▉

6A(FL) (0005) 01                    Page 10 of 18                    Form 3010  1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including without limitation Lender s acceptance of payments from third persons entities or Successors in Interest of Borrower or in amounts less than the amount then due shall not be a waiver of or preclude the exercise of any right or remedy

13 Joint and Several Liability, Co signers, Successors and Assigns Bound Borrower covenants and agrees that Borrower s obligations and liability shall be joint and several. However any Borrower who co-signs this Security Instrument but does not execute the Note (a co-signer) (a) is co-signing this Security Instrument only to mortgage grant and convey the co signer s interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend modify forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co signer s consent.

Subject to the provisions of Section 18 any Successor in Interest of Borrower who assumes Borrower s obligations under this Security Instrument in writing and is approved by Lender shall obtain all of Borrower s rights and benefits under this Security Instrument. Borrower shall not be released from Borrower s obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

14 Loan Charges Lender may charge Borrower fees for services performed in connection with Borrower s default, for the purpose of protecting Lender s interest in the Property and rights under this Security Instrument, including but not limited to attorneys fees property inspection and valuation fees In regard to any other fees the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower s acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

15 Notices All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower s notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower s change of address If Lender specifies a procedure for reporting Borrower s change of address then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender s address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument



DOC                                                                      LOAN

 6A(FL) (0005) 01                    Page 11 of 16        Initials        Form 3010  1/01

Composite Exhibit A

shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16 Governing Law, Severability, Rules of Construction This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument, (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender (b) words in the singular shall mean and include the plural and vice versa and (c) the word may gives sole discretion without any obligation to take any action

17 Borrower's Copy Borrower shall be given one copy of the Note and of this Security Instrument.

18 Transfer of the Property or a Beneficial Interest in Borrower As used in this Section 18 Interest in the Property means any legal or beneficial interest in the Property including but not limited to those beneficial interests transferred in a bond for deed contract for deed installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender s prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19 Borrower's Right to Reinstate After Acceleration If Borrower meets certain conditions Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower s right to reinstate or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred. (b) cures any default of any other covenants or agreements (c) pays all expenses incurred in enforcing this Security Instrument, including but not limited to reasonable attorneys fees property inspection and valuation fees and other fees incurred for the purpose of protecting Lender s interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender s interest in the Property and rights under this Security Instrument





DOC

6A(FL) (0005) 01                    Page 12 of 16                    Initials                    Form 3010  1/01

and Borrower s obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms as selected by Lender (a) cash (b) money order (c) certified check bank check treasurer s check or cashier s check provided any such check is drawn upon an institution whose deposits are insured by a federal agency instrumentality or entity or (d) Electronic Funds Transfer Upon reinstatement by Borrower this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However this right to reinstate shall not apply in the case of acceleration under Section 18

20 Sale of Note, Change of Loan Servicer, Notice of Grievance The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the Loan Servicer ) that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note this Security Instrument and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence join or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party s actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of or any duty owed by reason of this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

21 Hazardous Substances As used in this Section 21 (a) Hazardous Substances are those substances defined as toxic or hazardous substances pollutants or wastes by Environmental Law and the following substances gasoline kerosene other flammable or toxic petroleum products toxic pesticides and herbicides volatile solvents materials containing asbestos or formaldehyde and radioactive materials (b) Environmental Law means federal laws and laws of the jurisdiction where the Property is located that relate to health safety or environmental protection (c) Environmental Cleanup includes any response action remedial action or removal action as defined in Environmental Law and (d) an Environmental Condition means a condition that can cause contribute to or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence use disposal storage or release of any Hazardous Substances or threaten to release any Hazardous Substances on or in the Property Borrower shall not do nor allow anyone else to do anything affecting the Property (a) that is in violation of any Environmental



Composite Exhibit A

Law  (b) which creates an Environmental Condition  or  (c) which  due to the presence  use  or  release of a Hazardous Substance  creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence  use  or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including  but not limited to  hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation  claim  demand  lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge  (b) any Environmental Condition including but not limited to  any spilling  leaking  discharge  release or threat of release of any Hazardous Substance  and (c) any condition caused by the presence  use  or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns  or is notified by any governmental or regulatory authority  or any private party  that any removal or other remediation of any Hazardous Substance affecting the Property is necessary  Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

22  Acceleration, Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise)  The notice shall specify  (a) the default, (b) the action required to cure the default, (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non existence of a default or any other defense of Borrower to acceleration and foreclosure  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence

23  Release  Upon payment of all sums secured by this Security Instrument  Lender shall release this Security Instrument.  Borrower shall pay any recordation costs  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law

24  Attorneys Fees  As used in this Security Instrument and the Note  attorneys  fees shall include those awarded by an appellate court and any attorneys  fees incurred in a bankruptcy proceeding

25  Jury Trial Waiver  The Borrower hereby waives any right to a trial by jury in any action proceeding  claim or counterclaim  whether in contract or tort, at law or in equity  arising out of or in any way related to this Security Instrument or the Note



DOC                                                                                                LOAN

6A(FL) (0005) 01                              Page 14 of 15                              Form 3010  1/01

Initials

Composite Exhibit A

BY SIGNING BELOW Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Signed sealed and delivered in the presence of

_____     _____ (Seal)
         JUDY THIBODEAU                   Grace M Compton          Borrower
                                          7898 Stonebrook Dr
                                          Pensacola  FL  32514

_____                         _____
         Betty Bond                                           (Address)
         Betty Bond                   _____ (Seal)
                                                                  Borrower

                                                        _____
                                                              (Address)

_____ (Seal)     _____ (Seal)
                     Borrower                                    Borrower

         _____                         _____
              (Address)                                  (Address)

_____ (Seal)     _____ (Seal)
                     Borrower                                    Borrower

         _____                         _____
              (Address)                                  (Address)

_____ (Seal)     _____ (Seal)
                     Borrower                                    Borrower

         _____                         _____
              (Address)                                  (Address)

Composite Exhibit A

STATE OF FLORIDA,                    ESCAMBIA      County ss

The foregoing instrument was acknowledged before me this    August 4, 2005    by
Grace M Compton,   A  Single  woman

who is personally known to me or who has produced    DRIVERS   License   as identification

_____
Notary Public

Judy Thibodeaux
Notary Public
State of Florida
My Commission Expires 06/16/09
Commission No 780845

DOC

6A(FL) (0005) 01                              Page 16 of 16                    Initials ____    Form 3010  1/01

Composite Exhibit A

Recorded in Public Records 12/7/2018 1:31 PM OR Book 8002 Page 96 Case 1:17-cv-23131-KMW Document 18 Filed 03/15/19 Page 25 of 31
Instrument #2018104555, Pam Childers Clerk of the Circuit Court Escambia
County, FL Recording $18.50

This document was prepared by:
**BRANCH BANKING AND TRUST COMPANY**
**111 MILLPORT CIRCLE MAILCODE 900-01-02-20**
**GREENVILLE, SC 29607**
Return To:
**BRANCH BANKING AND TRUST COMPANY**
**111 MILLPORT CIRCLE MAILCODE 900-01-02-20**
**GREENVILLE , SC 29607**

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **PO Box 2026, Flint, MI, 48501-2026** , does hereby grant, assign, transfer and convey, unto **Branch Banking and Trust Company** a corporation organized and existing under the laws of North Carolina (herein "Assignee"), whose address is **111 Millport Circle, Greenville, SC, 29607** , a certain Mortgage dated **08/04/2005** , made and executed by **GRACE M COMPTON A SINGLE WOMAN** , to and in favor of Mortgage Electronic Registration Systems, Inc. as nominee for BRANCH BANKING AND TRUST COMPANY, its successors and assigns upon the following described property situated in Escambia County , State of Florida:

Such Mortgage having been given to secure payment of **Ninety Three Thousand Five Hundred Twenty dollars and Zero cents ( $93,520.00 )** (Include the Original Principal Amount) which Mortgage is of record in: **Book: 5738 Page: 417** , of the Escambia Clerk of Circuit Court Records of Escambia County, State of Florida, and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.
**Description/Additional Information: SEE EXHIBIT A**
**Originally Recorded on: 09/26/2005**

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on _December 5, 2018_ .

Mortgage Electronic Registration Systems, Inc. as nominee for BRANCH BANKING AND TRUST COMPANY, its successors and assigns
(Assignor)

By: Paul M Keck
Its: Vice President

Witness BEVERLEY P WHITNER

Witness TABITHA SMITH

STATE OF **SOUTH CAROLINA, GREENVILLE COUNTY**

On _DECEMBER 05, 2018_ before me, the undersigned, a notary public in and for said state, personally appeared Paul M Keck, Vice President of **Mortgage Electronic Registration Systems, Inc. as nominee for BRANCH BANKING AND TRUST COMPANY, its successors and assigns** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public Marcia P Walker

**Commission Expires: 02/14/2022**

Composite Exhibit A

EXHIBIT "A"

Lot 10-E, Block A, Villas at Silverton, Phase 2, according to the plat thereof,
recorded in Plat Book 17, Page 94, of the Public Records of Escambia
County, Florida

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE:

Case No.19-30218-KKS
Chapter 7

GRACE P. COMPTON,

Debtor.

_____/

### AFFIDAVIT IN SUPPORT OF
### MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF
COUNTY OF

BEFORE ME, a notary public duly authorized to take acknowledgements and administer oaths, on this day personally appeared _Latosha A. Moody_ after having been duly cautioned and sworn under oath, deposes and states as follows:

1.      I am making this Affidavit in connection with and in support of the *Motion for Relief from Automatic Stay* filed by Branch Banking and Trust Company, a secured creditor in the above-styled bankruptcy proceeding.

2.      Branch Banking and Trust Company ("BB&T Mortgage") is the holder of the subject Note and Mortgage.

3.      I am a _Bankruptcy Officer II_ (Job Title) for BB&T Mortgage. In said capacity, I have access to BB&T Mortgage's computerized account records and have personal knowledge of the facts stated herein. I make this affidavit on personal knowledge, based on my review of the records of BB&T Mortgage, as they relate to the loan in this matter. The business records reviewed were made at or near the time of the transactions described in them, by or from information transmitted by a person with knowledge of the transactions. These records are kept in the course of BB&T Mortgage's regularly conducted business activities, and it is BB&T Mortgage's regular practice to make and keep such records.

4.      I have authority to make this affidavit.  Further, I have personally reviewed the records of BB&T Mortgage and make this Affidavit based upon personal knowledge obtained therein.

5.      I am familiar with the loan made on August 4, 2005 by Branch Banking and Trust Company to Grace M. Compton in the original principal amount of $93,520.00 ("the Loan"),

Exhibit B

Affidavit of Indebtedness
Case No. 19-30218-KKS

which is the basis for Movant's secured status. The property located at 7898 Stonebrook Dr., Pensacola, Florida 32514 (the "Property").

6.     BB&T Mortgage maintains a computerized account of the Loan including all receipts and disbursements, charges, and credits.

7.     The amount of indebtedness and the nature and extent of default set forth in the *Motion for Relief from Automatic Stay* is derived from the computerized account of the Loan.

8.     As of March 8, 2019, the Note and Mortgage payments are in default as Debtor, Grace P. Compton, is contractually due for the August 1, 2018, payment, and has failed to timely meet and satisfy the payment requirements with respect to the obligations set forth in the Note.

9.     As of March 8, 2019, on examination of these business records, it is determined that there is now due and owing upon the Note and Mortgage and outstanding principal balance of $71,677.78, plus advances made, attorneys' fees and costs, and interest accruing thereon in accordance with the loan documents.

10.    This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of BB&T Mortgage and Movant's books and business records, and is intended to show that there is available competent testimony which can be introduced at evidentiary hearing if necessary.

**FURTHER AFFIANT SAYETH NAUGHT.**

AFFIANT

STATE OF: NC
COUNTY OF: WIlson

The foregoing instrument was sworn before me this 14th day of March, 2019 by Latasha A. Moody, who is personally known to me and who did take an oath.

Karen P. Girona
NOTARY PUBLIC

My Commission Expires: 8/30/20

KAREN P. GIRONA
NOTARY
PUBLIC
NASH COUNTY NC

Exhibit B

### DEBTOR PAYMENT HISTORY
#### Grace P. Compton
#### 19-30218-KKS

| Payment Due Date | Amount Due | Amount Received |
|---|---|---|
| August 1, 2018 | $553.21 | $0.00 |
| September 1, 2018 | $553.21 | $0.00 |
| October 1, 2018 | $553.21 | $0.00 |
| November 1, 2018 | $553.21 | $0.00 |
| December 1, 2018 | $553.21 | $0.00 |
| January 1, 2019 | $553.21 | $0.00 |
| February 1, 2019 | $917.03 | $0.00 |
| March 1, 2019 | $917.03 | $0.00 |

Date last payment was received: NA

Exhibit C

Source: Escambia County Property Appraiser



◄ Navigate Mode ⦿ Account ○ Reference ➡    | Restore Full Page Version |

**General Information**

| | |
|---|---|
| Reference: | 201S302700104001 |
| Account: | 023048949 |
| Owners: | COMPTON GRACE |
| Mail: | 5626 NORTHROP RD<br>MILTON, FL 32570 |
| Situs: | 7898 STONEBROOK DR 32514 |
| Use Code: | SINGLE FAMILY - TOWNHOME |
| Taxing Authority: | COUNTY MSTU |
| Tax Inquiry: | Open Tax Inquiry Window |

Tax Inquiry link courtesy of Scott Lunsford
Escambia County Tax Collector

**Assessments**

| Year | Land | Imprv | Total | Cap Val |
|---|---|---|---|---|
| 2018 | $17,100 | $66,420 | $83,520 | $73,810 |
| 2017 | $17,100 | $50,000 | $67,100 | $67,100 |
| 2016 | $19,000 | $47,017 | $66,017 | $66,017 |

Disclaimer

## Tax Estimator

### › File for New Homestead Exemption Online

**Sales Data**

| Sale Date | Book | Page | Value | Type | Official Records (New Window) |
|---|---|---|---|---|---|
| 09/2005 | 5738 | 390 | $100 | QC | View Instr |
| 08/2005 | 5738 | 392 | $100 | WD | View Instr |
| 08/2005 | 5722 | 902 | $116,900 | WD | View Instr |

Official Records Inquiry courtesy of Pam Childers
Escambia County Clerk of the Circuit Court and
Comptroller

**2018 Certified Roll Exemptions**
None

**Legal Description**
LOT 10E BLK A VILLAS AT SILVERTON PHASE 2 PB 17 P 94
OR 5738 P 392

**Extra Features**
None

**Parcel Information**                          Launch Interactive Map

| | |
|---|---|
| Section Map Id: | 20-1S-30-2 |
| Approx. Acreage: | 0.0607 |
| Zoned: | HDMU |
| Evacuation & Flood Information: | Open Report |

View Florida Department of Environmental Protection(DEP) Data

Exhibit D



**Buildings**

Address: 7898 STONEBROOK DR, Year Built: 2005, Effective Year: 2005

**Structural Elements**

**DECOR/MILLWORK**-*AVERAGE*
**DWELLING UNITS**-*1*
**EXTERIOR WALL**-*VINYL SIDING*
**FLOOR COVER**-*CARPET*
**FOUNDATION**-*SLAB ON GRADE*
**HEAT/AIR**-*CENTRAL H/AC*
**INTERIOR WALL**-*DRYWALL-PLASTER*
**NO. PLUMBING FIXTURES**-*6*
**NO. STORIES**-*1*
**ROOF COVER**-*COMPOSITION SHG*
**ROOF FRAMING**-*GABL/HIP COMBO*
**STORY HEIGHT**-*0*
**STRUCTURAL FRAME**-*WOOD FRAME*

Areas - 1428 Total SF

**BASE AREA** - *984*
**GARAGE FIN** - *240*
**OPEN PORCH FIN** - *36*
**SCRN PORCH UNF** - *136*
**UTILITY FIN** - *32*

Images

10/2/15

The primary use of the assessment data is for the preparation of the current year tax roll. No responsibility or liability is assumed for inaccuracies or errors.

**Exhibit D**